and it looks like we hear first from Mr. Dickey. Thank you, Your Honor, and may it please the Court. Gilbert Dickey is court-appointed amicus adverse to the National Labor Relations Board Statute. This matter calls for an application of well-established principles of federal jurisdiction. Article 3 limits the jurisdiction of federal courts to cases or controversy. There's no dispute that adversity between the parties is needed for a case or controversy that can be brought before an Article 3 court. The only dispute here is whether there is sufficient adversity between the parties. The answer to that question is no. Where parties do not have any disagreement between them and instead come to a court merely seeking a judgment that ratifies the relationship as it already exists, the adversity necessary for Article 3 jurisdiction is lacking. And parties cannot bootstrap themselves around this problem by saying that they would like their relationship to be reflected in a binding judgment of the court. In this matter, the parties are in full agreement on the results of this court. They both agree that this court should enter an order enforcing the board's order below. For its part, Constellium entered an agreement below where it committed that it would not oppose the board's application for enforcement on any ground. Consistent with that understanding, Constellium has consented multiple times before this court to the entry of an opposing, of an order enforcing the board's order, a judgment enforcing the board's order, and has never opposed that enforcement on any ground. The NLRB has, of course, come here seeking enforcement of a board order. Counsel, could I interrupt you, please? Is your argument confined to an agency context? In other words, and to tease that out a little bit, if two parties became aware of a dispute before an action in a district court was commenced and resolved it, and then filed action in district court already having reached an agreement, but part of that agreement is to seek the court's approval or to put the settlement on the record in some way. Does the argument you're making encompass that situation, or is it where we find ourselves in here? Thank you, Your Honor. I don't necessarily think the argument I'm making on the merits encompasses that situation. I think the legal principles that underlie this apply the same to a matter proceeding before a district court or before an agency, if I could unpack that a little bit. So, I think the difference in the That was not the case with the agreement here. And in that instance, a judgment... I'm sorry, go on. I think you may be about to answer my question. In that case, a judgment from the court will have a real-world effect. So, if the court, if you sort of posit, and this often happens with consent decrees, an agreement where the parties agree that their settlement of their dispute will only become final and binding when approved by the court. When the court denies approval, they then just proceed to litigation. So, then, is this just a matter of how you paper your agreements? In other words, if they had, in this case, inquire whether they did, papered it in a way that it's not an agreement unless approved by the court of appeals, would that mean there's a case for controversy? I think the agency context might complicate that a little bit, just because here, what's being enforced is the board order, but the agreement is with the employee. So, you sort of have a two-stage process. So, this is almost, in some ways, like the district court asking this court for summary affirmance of its consent order that it entered. And I don't think this court would have any problem concluding in that situation. There was not sufficient adversity. But there could quite easily be a workaround where they, you know, enter something where the agreement is conditioned on being able to obtain enforcement from that court. I don't think that's an unusual proposition. Can I just ask you logically? I mean, it does seem to follow from your argument, at least the argument in the reply brief, that if they had structured this settlement so that the settlement itself, the agreement, became effective if and only if there was, the board went to court and got this consent decree entered, that that would be fine. But I don't understand how that bears on why we care about adversity. You still have all the parties before the court asking for the same thing. And so, if you're worried about, you know, the idea that you need, like, an adversarial presentation of the issues, I don't understand why this makes any difference. So, as a practical matter, some of the practical reasons that the court says, our adversity might not be present in all cases where there might not be a presentation of the issues. But I think it matters quite a bit in terms of giving, there are lots of different ways the courts have used to explain sort of the minimum of adversity required for a court to exercise article three jurisdiction. But one of the most common ones that I think has some real bite here is, whatever the decision of the court is, it has to have some real world effect. And that real world... But counsel, I thought the one thing we did know from Supreme Court decisions in the mootness context, but they do say that the difference between a private settlement and a consent decree has real world consequences. And that's why these cases don't moot out just because the employer is abiding by a private consent decree. There's still live controversies because entering a consent decree absolutely has real world consequences. So that's, I don't understand this. Are you saying those cases are wrong? I'm not sure precisely which cases you're referring to here, whether it's Mexico textiles. I'm sorry, Your Honor. I don't remember case names. I'm sorry. Yeah. So do you think that disputes become moot if there is a settlement agreement, a private settlement agreement? If the employer is abiding by an agreement, does the case moot out at the point at which you're trying to get a consent decree entered? I guess you would say it does because now there are no real world consequences. So in the NLRB enforcement context, I think that case would not moot out. And I think Mexico textiles shows you this. I'm going to throw case names at you. No, no. Case names are good. I think what you see there is, and they cited that as an example where the employer had already abided, but the employer was also in the circuit court very actively opposing the enforcement order. So actively opposing what was being sought from this court. But if it's not going to have any real world consequences, why isn't it moot? You have adversity, but you don't have real world consequences under your theory that the difference between a private settlement agreement and a consent decree does not have real world consequences. I mean, I think there are certainly, if you have an employer who is fighting against an enforcement decree, you can expect that there will be real world consequences. Isn't the real world consequence just that once it's a consent decree, it can be enforced by contempt. Whereas a private settlement agreement can only be enforced through a contract action, if at all. I mean, I think the court has been pretty clear about this, but maybe I'll go back. So to briefly respond to that, Your Honor, I think if you look to the core Article III adversity cases, they're always citing to some real world effect that is not the mere fact. Of course, any judgment could be enforced by contempt. It is not the mere fact that there will then be a judgment. Starting with INS Bichata, which is one of the recent Supreme Court cases where this came up, the court didn't cite that there will be a judgment or not. It said, our exercise, our decision will decide whether this person is deported or not. Then moving on to Windsor, the court didn't say, our decision will bring finality to this dispute. It said, our decision will decide whether a tax refund is paid. So when the court has referred to real world consequences in the Article III adversity context, I believe it has always been referring to something different from just merely the fact that there would be a judgment and that judgment. And I think- Because the point, as I understand you, Mr. Dickey, the point of that is, is that the real world effect must be a direct effect, not in some subsequent action. Right? The point of a court order that could be enforced by contempt is that in a subsequent action, there could be an effect. But the court in Windsor, for example, refers to no, no, no, that the real world effect is not that there is an order finding the law and constitutional, but there's an order requiring the government to pay the tax or tax refund, I guess, in the inverse. That's exactly right, Your Honor. And that's why in Windsor, the court said it would be a different case if the government had agreed to go ahead and pay that tax refund. Because it's not the to the dispute in some way, it had to be some immediate real world consequence, independent of the existence of a judgment. And can I go back to the earlier point? So, we talk about, you know, consent judgments, and we think about, you know, cases like Swift, right? The court talks about where we have a complaint that's filed as in Swift, and we have an answer, and then they present the court with a settlement, right? And whether that's a consent decree or any other settlement, the courts have allowed that to occur. And in part, because, as you indicated earlier, if the court rejects that, there's a trial that goes on. There is adversity that remains unless and until the court approves that consent decree. But I guess the question I've got here is, in this scenario, there is no possibility of that adversity in the court system, right? Because if we accept the board's order, our action's over. That's our blessing, and then LRB goes home. If we reject it, the action is also over. And in that instance, unlike a consent decree in court, adversity might exist, but only before the agency, right? And so I guess the difference that I'm having trouble getting out from what you're saying is the separation of powers concern that's here and not in a consent decree. Yes, so I think that's the key feature. So they've cited that there may have been adversity at some point, you know, sort of preceding when they came to court. But here, there can never be adversity before the court because they came to this court with no adversity. I think it would present a different case, to be clear, Your Honor, if they were opposing enforcement. That is, you had one party seeking a judgment and another party sort of opposing that judgment, and there would be some faith. Of course, that would be different. That would be the standard review. This is old colony trust, 1928 Supreme Court case that tells us, you know, where you've got a party that's aggrieved by an agency decision, we require adversity, right? And so the taxpayer and old colony trust didn't want to pay the money. The commissioner wanted the money. And the court said, we have a case of controversy because we have adverse parties with those interests. And so if Constellium didn't want the entry of this order, right, if they opposed it, or at least did not acquiesce to it, right, see Windsor, at least they didn't acquiesce to it, then we would have adversity, right? Because we have a company that has not acquiesced to an order that the NLRB won't, right? That's Windsor itself. But the point, I guess, that I'm trying to get to here is that works in the court setting. When the consent order is sought, but not in this sort of agency Article III setting. Yes, Your Honor. I think here where they have already agreed to this order, the court can sort of, barring some breach of what they have agreed to do or something, the court can never exercise jurisdiction because the core problem here is they're never able to and present the court with any place where a decision from this court would change the relationship between the parties in any way other than, well, now there's a judgment and, you know, everything that goes with the judgment like contempt. So I think at bottom, and I think this is actually very well illustrated if you look at page 24 of the NLRB's brief, they list a series of sort of disputes between Consalium and the NLRB. But all of those disputes that they list in this sort of long sentence, it's like, you know, where NLRB did not want to post these notices. NLRB did not want to agree to enter bargaining, or I'm sorry, Consalium did not want to post these notices and enter into this sort of bargaining. All of that was resolved and the only thing they list that they're seeking from this court is a judgment. And that alone can I see my time has expired, so I'll reserve the remainder for Reba. Good afternoon, Your Honors. Yes, good afternoon, Your Honors. Greg Sautter for the National Labor Relations Court. May it please the Court. There is no disputing that federal courts have a jurisdiction to grant requests for consent decrees. They do it all the time, even when parties arrive in court with their settlement in hand and no intention to litigate a case. This is what's happening here. The board's application for enforcement is akin to one of those requests for consent decree. The only difference is that the act, the National Labor Relations Act, only allows for the enforcement of final board orders. So instead of the parties being able to appear before this court in person, their settlement is incorporated into a board order, which serves as a vehicle for enforcement. However, the board's order itself does not resolve the party's dispute because it has no self-enforcing effect and no binding effect. So this additional step does not, the board's approval of the settlement and incorporation into an order does not resolve the party's dispute. Instead, it remains live and their consent decree is entered, just the same way it would for regular consent decree applicants. Now, I just, I really want to make sure I understand this point. Sure. So I think if I understand, Amicus, they would say, well, the board order might not resolve it, but there's like a private settlement underlying the board order, like the parties have reached a settlement. So why doesn't that resolve it? Because that settlement is in short, not binding under, upon to the parties until the, it's the board's orders enforced by this court. Wait, wait. So help me, help me understand why that is, right? Because the, the agreement is a, is a contract. And it says that it is effective upon the board's approval. So the board has is bound by its agreement with the union to do all the things that are listed here, right? Which are the same things you're asking us to enter, right? Well, in order for a contract to be binding, you have to be able to hold somebody against it. Okay. And you, and, and so but you know, most people enter contracts, they don't come to the court of appeals to bless them, right? They, if they are breached, then they file an action, alleging a breach of a contract and they seek whatever remedy is available to them at law or equity, right? I mean, now I understand as a practical matter, that's not a very satisfying answer for you. And I, I totally get that. It's also not an option. It's also not an option, your honor. The union, the union cannot, the union cannot go to state court and obtain enforcement of the settlement. And the reason for that is that section 10A of the National Labor Relations Act gives the board exclusive jurisdiction to resolve unfair labor practices. So, and it's the same reason that the union can't show up in district court and seek relief from an unfair labor practice. Why didn't the union go to district court to complain against unfair labor practices? So it's not, so, but that, so that doesn't seem to make sense to me because it's still a contract, right? Whether, whatever it is, right, they've agreed to provide X information by contract, right? Whether that's a violation of the National Labor Relations Act is neither here nor there, right? I mean, I could agree to provide something to somebody if I fail to do so, right? If they fail, if they fail to provide information, that is an unfair labor practice. They are violating the contracts by failing to provide information. They're back before the board. Yeah, but that, but that does, I mean, it may be, but I mean, you could agree to all sorts of things that might also, you could agree to, I'm not going to infringe on your patent. Yeah, yeah, so we got an issue. I'm, I'm, yeah, I think you're infringing on my patent. I'm agreeing, and I say, well, I, you know, maybe I am, maybe I'm not, but what's, I'm going to agree not to, you know, and then I do it, is thought to be infringing on a patent, whether or not that's an enforceable patent, whether or not there's prior and all that sort of stuff, you could still sue to enforce the contract and not implicate the exclusive jurisdiction for intellectual property matters, couldn't you? I'm not familiar with it. I understand, I understand your example. I'm not familiar with the statute for patents and intellectual property. If I was, I'd be happy to answer your question. I appreciate it. I may not be right there. I'm just trying to deal, it seems like your answer, though, was based on exclusive jurisdiction principles, and I was just trying to say that if, if that's the basis of your answer, that certain, allegations of certain conduct violating statutes or provisions for which there's exclusive jurisdiction somewhere, I get that you might not be able to say they violate the Act, you know, as a, as your primary basis of recovery or infringe on a patent in the other example, but you can still agree, I think, you know, as a matter of two parties to something contractually, even, you know, whether or not it's a violation of something that there's exclusive jurisdiction for. Is that not right? Yeah, I under, I understand the quandary, Your Honor. And again, I'm not sure what the, the situation would be in patent law and what, to what extent there is a preemption in that area. But I can tell you for a fact that if the union, if, if Constellium violates the, the settlement as it stands unenforced, the union cannot go to state court and for contract action, the union. Give me, can you give me a citation? You know, not that I don't believe you, but, you know, I tend to rely on some, you know, authority for it. What is the authority? Because I didn't see that argument made in your brief or, or anywhere else that a, that a contract is rendered unenforceable by the National Labor Relations Act. I do not have a citation for you. I'm happy to a letter brief after, after this argument, if you'd like. What I can tell you, I would appreciate that. Yeah, sure. I assume you'll let me know how much time I have to do that. Do it as soon as you can. That'll be good enough. Yeah, ASAP. No, what I can tell you is that if, if it, if it did come to this, then, then the, then what the union would have to do is file another charge with the, with the board. It would have to be investigated by the region. The region could then, based on the, the, the settlement that the parties have signed, go directly to the general counsel and say, you know, we need to have this, this, this consent decree enforced, but then query what happens if we show up again in this court and Constellium says, and we show up again in this court to enforce the same order and Constellium once again says, oh, we have no problem with, we have no objection to enforcing the order. I don't know what would happen. Listen, but the board then can enforce the order, right? So the board says you violated our order before. And so now we, you know, we, we impose these consequences, whatever. I mean, I don't know what authority the NLRB has, but that's the NLRB and the NLRA's issue, not, not mine, right? I mean, I don't, that's the system that's set up if there's adversity or not adversity, right? I mean, these are the practical consequences. In the example I just said, the only, the only thing the board can do is come back to this court and seek enforcement of this order. The board can't come back to a sponte, you know, start to penalize Constellium or file for a consent, a contempt decree in this court because the original order has never been enforced. Can I ask a slightly different, a different question? So as I understand it, we got Constellium and the NLRB shows up and they are saying to us, we want you to approve the board's order. And under 160E, we're instructed that we cannot consider, maybe with some exceptional circumstances limitation, we cannot consider arguments or evidence that were not presented before the board. And we know here that there were no arguments or evidence presented before the board. And so what that means is we have no authority. If we have jurisdiction, we have no authority to do anything other than rubber stamp the board's order because 160E takes any judgment away from us. Am I reading that wrong? No, you're correct. Typically, typically the board, the court under 160E can review, modify, alter board orders. But what the Supreme Court held in Ochoa Fertilizer is that when you have a situation where there are no arguments raised before the board, in exception to its decision, then at that point, the... So I'm following you. So I want to make sure that I understand if Congress passed a statute that said the Consumer Financial Protection Bureau may file a consent order. And if they do, a federal district court shall approve it without considering any argument or evidence to the create Article III problem by divesting the court of any judgment to exercise. I mean, if that was the case in every single situation, obviously that would present the problem. But in cases where a party voluntarily relinquishes their defenses in exchange because they don't want to litigate anymore, they want to... But that's the scenario they're filing. I mean, the hypothetical is it's a consent order, right? And so in each instance, there's a consent order, right? And it seems like to me in both scenarios, I think it's different in the agency context, but I'm just trying to understand this narrow issue is that if Congress said, no, no, no, in this scenario, the district court must approve without considering argument or evidence to the contrary, whatever the agency presents. That seems like to me, that would be an Article III problem. And I take it you agree, but I'm having... So why is that not our case? Ian. So the... And I'm sorry, I can't quote you a case for this, but the Supreme Court has held that courts have limited authority to review consent decrees. And now I'm talking outside of the class action context because Rule 23 has specific requirements there. Well, I mean, sort of, right? So what the court says, I think you're referring to SWIFT, right? But when SWIFT... No. No, because SWIFT's talking about review of a consent decree, right? Not the entry of a consent decree itself. The... And I can find this book for you as well. The court has said that courts have an obligation to review that a request for consent decree, I believe is fair, serves the purpose of the statute under which it's entered and so on and so forth. Very general things, nothing under the hood, if you will. So is it your position that we could, the Court of Appeals here could look at this thing and even though below those issues you just articulated, you know, fair... We say it's not fair. We think this is just not a fair settlement. Could we say we're not going to approve it because of that? So the one thing I have not been able to find is whether that particular rule of the court applies equally to agency consent orders. But... Well, doesn't... It doesn't... I don't mean to interrupt you. I appreciate you, you know, saying that. But doesn't the language of subsection E combined with the COA fertilizer are almost... Yeah. Well, first of all, the statute, doesn't the statute almost suggest no? I think the statute itself does suggest no. But to the extent that the rules for consent orders lie and for approval of consent orders lie outside the statute, the statute doesn't speak specifically to consent orders. Yeah, consent orders... Then I think that could be an option. Well... I don't understand. Say that one more time. You think we can, that we have broad fairness review of the board's consent order? I don't know, Your Honor. I've seen that the Supreme Court has held that there is a rule for consent decrees that courts have some modicum of review power. Yeah. But I don't know if it applies to agency consent orders. I'm sorry, Judge Harris. But I'm sorry. I feel like I'm just like... I'm just behind on this. But I thought the whole... We started with the Ochoa fertilizer case. I thought the Supreme Court already said we can't as Judge Richardson said, subject to some very narrow exceptions, including jurisdiction. We don't have any choice. You have to just enforce the order. I'm sorry. Was that not the point of that case? That was the point of that case. I'm not sure how Ochoa melds with this other... So it's not that Congress passed a statute telling us to do this. It's that the Supreme Court told us to do it and they did it in an opinion where they talk about jurisdiction as an exception. And so they must have thought it didn't apply here because they acknowledge if we don't have jurisdiction to do it, we don't have to do it. So this seems somewhat different in that it's not just that there's a statute, it's that the Supreme Court has already looked at that statute and told us to go ahead and enforce it because... And cites in the course of that opinion that there is a jurisdiction exception, but apparently finds it doesn't apply here. So I don't think it's quite a drive by jurisdictional holding because it discusses jurisdiction. So doesn't that put us on a slightly different... Doesn't that answer some questions for us? I mean, certainly we think it does. The sheer fact that this question has arisen so seldom with regards to consent decrees, let alone agency consent decrees, to me certainly reflects a broad assumption that this kind of jurisdiction exists. Now, that doesn't mean that once you poke into it, you might not find something different. But I think that there is really a strong basis to find that not only because of the nature of the request, but also because of the nature of the relief that is requested. Specifically, the fact that it's injunctive... Can I ask a follow-up question just to make sure? I have two that are sort of, I hope, relatively narrow. Assume just for a minute that we have some order because of whatever reason. Does that end the proceeding here and it just goes back to the agency? Is that your understanding of how it's going to work? Yes. Unless we were to file an appeal or something like that, yes, that's the way it would end. Right. And 160E gives you pretty narrow sort of appellate options at the very end. But it effectively ends it subject to review by the Supreme Court or otherwise. All right. So, I just want to make sure I understood that. The second question is the last data that I saw suggested, and this may be totally wrong, but I think this was 2009, that you all sought enforcement of 61 board orders nationwide out of maybe 8,000 board orders that were entered. Is that order of magnitude correct based on your understanding? I think it's not far off. My understanding is that although we settle a lot of cases, most of the settlements are what we call informal settlements that occur before the issuance of a complaint. This is a formal settlement because complaint was filed before the parties agreed to settle. And formal complaints, I think we seek an average of about 18 or 20 a year. At least that's been the case in the last few years. The last few years, we've seen a decline. When you say formal complaint, you mean you seek enforcement of 18 to 20 a year? Of these formal settlements, yes. And can you maybe shed just a moment's light, and I apologize, Judge Harris, for running over, but can you shed a little bit light on why you sought to enforce this order? It's a half a percent of the board's orders. So any order, any order, any consent order like this one that results from a settlement between parties after complaint has issued in the board, we will seek enforcement. Settlements that occur after a charge is filed, but before a complaint is filed. So the way, let me explain just quickly. I got you. You got it? I understand the timeline. I'm with you. Okay. Can I ask a question? I'm sorry, I know we're keeping you, but so there was this discussion earlier on about, it seems that at least from amicus's perspective, there would not be a jurisdictional problem here if this had been structured slightly differently so that the parties, Constellium and the union enter into this agreement. I'm sure I'm going to say it wrong, but they enter into this agreement and their agreement is contingent not only on board approval, but on the board then taking the next step, doing what you just described and going to court and getting a consent order entered. And until then, there is no agreement. Could you structure your orders that way? How big a deal would it be? I mean, if it's as simple as changing the wording, which by the way, I personally, the board has, because this is an argument that Mr. Dickey raised in reply, we haven't been able to address it. So I can't say how the board would respond to that, but I myself have certainly reservations about that argument. But I would say, we would certainly argue that obviously we could rewrite it, but we think that the settlement as written already satisfies those requirements. I don't think that it's necessary to use magic language like conditioned or contingent to find that the parties intended their contract and depended on as part of their agreement that their settlement would be enforced. The first paragraph of the first page of the settlement says the parties agree that upon approval of this stipulation by the board, a board order in conformity with its terms will issue and a court judgment enforcing the order will be entered. So that's already one clear evidence that the parties expect and anticipate their settlement to be enforced. Then there's the nature of the relief to which the parties have agreed, which is injunctive relief, which is only obtainable in court. Query why they would include such relief if they didn't view court enforcement as part and parcel of their agreement. And then finally, there is the board's decades-long experience in obtaining enforcement of these consent orders, which would factor as well into the party's expectation that it would be enforced. Otherwise, these settlements would have to be structured. Can I ask a follow-up to this, maybe? And we'll keep you a little bit longer if you don't mind. We appreciate your help, obviously. Not a problem. So I want to think about this idea that Judge appeals in the agency context in light of Windsor and Celia and Chadha, just for a minute, if you would. So I read Windsor to say that, yes, there's adversity there because the United States has kept the money, right, and sort of continues to assert that the tax payment was due and payable, right? That's on the tax refund side, right? And, you know, Celia says that, or I'm sorry, Windsor says, but it'd be different if they agreed to pay the tax refund, right? You know, that's the sort of express, but this case would be different. Yeah. And Celia... Right. If they had settled the case, or if they had made a settlement contingent or something, and they had said, we'll pay you the money, we'll pay you the money, but we're still going to argue with this case, then there would not be any adversity there. Yes. Right, right. So, and same thing with Celia, right? So Celia says, in essence, that, you know, there's enough adversity because the civil investigative demand is still out there and they refuse to withdraw it. And so there's an adversity of interest, right, with respect to what the remedy is, even if there's no adversity of argument with respect to the merits. But Celia tells us that, you know, had they withdrawn, agreed to withdraw that, right, acquiesced to a withdrawal, then there wouldn't have been adversity. And so I guess where I'm sort of, my rub here is that that looks a lot like what we have here, right? Where both Constelium and NLRB have agreed, you know, in essence, to the second part, right? To withdraw the investigative demand, the equivalent of, to pay the tax refund, right? Constelium has agreed to do all those things, right? And so to the, you know, they're the defendant, like the United States agreed to pay the tax refund, like Constelium agreed to comply with all of these conditions, provide the information, I'll use this just shorthand for all of the things, but their agreement to provide the information is like Windsor's, you know, hypothetical, agreeing to pay the tax refund and that there would not be adversity there. Can you walk me through that ticket? Yeah, my understanding of Windsor is slightly different in a sense that it would take more than, it would take more than for the government to agree to pay the money, the government would actually have to pay the money for the, you know, for the dispute to be gone. In this case, and this is, you know, classic in board settlements, we don't, at the time that we file for enforcement, the record before this court, it is unclear whether and to what extent Constelium has complied with the board's order. In fact, at the time we filed for enforcement, it was actually impossible for Constelium to have complied because we filed it with, Constelium had, was required to post notice for 60 days and we filed our enforcement order less than 60 days before, less than 60 days after the board's order issued. Right, but those cases are all on appeal, right? And the question is, do they retain jurisdiction there? And so the question that's asked is whether they had paid it by that point, not at the point of initiation, right? I mean, they're asking whether they should have been. Right, and I think there's one, there's a critical difference between the nature of the relief here and Windsor and CELA, and that is the injunctive, the forward-looking nature of the relief, the fact that the board's orders impose a continuing obligation. It's the nature of the board's orders and of the injunctive relief that a dispute is not finite in time. It's an sometime in the future, and that's why parties take those extra steps to protect themselves against that eventuality. That's something that's not in Windsor, that's not in CELA, but that was in SWIFT and is in the cases that have relied on SWIFT. This idea that you cannot, and that forms the basis of our argument because as I said, we disagree, or at least I don't know what the board thinks, but I personally have reservations with the idea that you can manufacture jurisdiction simply by tossing a court approval clause into any settlement agreement. However, when you are seeking forward-looking relief like we are in this case, your dispute clearly remains open at least until the court enforces the order and enforces the injunction. I see my time is way up, so unless you all have any other questions, which I'm happy to ask, we would request that the court enforce the board's order in full, and I thank you very much for your time. Thank you. Mr. Kratzer? Yes, thank you, Judge. Dallas Kratzer, and I represent Constellia in this. Our position is quite brief. We completely agree with the legal analysis of the NLRB, and we adopt that position and have nothing to add to it. However, if you have any questions factually, specifically concerning Constellia, I'm happy to answer those. I think maybe your colleague suggested it may or may not matter, but have you complied with the order? Have you provided the disclosure and posted the notice and done all the things that you promised to do in the settlement agreement and the board order? I've been advised that we have complied with the order in full, but if there are no further questions, I'm happy to move along. We've exhausted ourselves. Thank you. And then, Mr. Dickey, you have time remaining. And actually, before you get started, I'm so sorry. Can I ask you a question? Because I am confused. Let me make sure I can phrase this right. If the problem here is that entering a consent decree doesn't have real world effects, there's no change in the party's legal, there's no cognizable, for purposes of Article III, there is no cognizable change in the party's legal relationship just because you enter a consent decree. I don't understand why, what that has to do with adversity. It would seem to me that then even if the employer is objecting and saying, we don't want this consent decree, so what? Now you have a fight about something that has no real world consequences, and we would say it's an advisory opinion. I don't see how adversity, how the party's asking for something different, saves jurisdiction if, as you say, there are no real world consequences to the decision, no cognizable real world consequences to whether or not we enter the order. Do you see what I'm saying? That sounds more like a standing problem, a concrete injury problem than an adversity problem to me. I thought the adversity problem was like in Windsor, where we all agree there's a concrete injury, a harm here, the money has not changed hands. The problem is the parties have come to court asking for the same legal ruling, DOMA is unconstitutional, and the same relief. We want an order, both of us, the government and E.D. Windsor want an order that requires the government to pay the money. I understood the court in Windsor to be saying, we don't have a standing problem, there are real world consequences here because the money will or won't change hands. What we have is a lack of adversity, and then went on to say, but that's just prudential, and here we have amicus, and the arguments are well presented, so we're good to go. That was more like a statement than a question, but do you understand my question? I feel like we're mixing up the role that adverse presentation of the issues is playing here, and if there are no real world consequences, if that money had changed hands in Windsor, I don't think it would make any difference if the parties wanted a different ruling, wanted different rulings from each other, because so what? Now there are no real world consequences. That seems different to me than the adversity question. That's my question. Thank you, your honor. I'll try my best. I think, as I explained, that adversity is used in a lot of different senses, but often what the court means, and I believe the court actually did say they were discussing adversity when they were discussing this in Windsor, and I know they didn't chop it. They viewed this as an adversity issue. Whether you think that's the right bucket, as I said, the language- But the court did say in Windsor, the one thing we know they said expressly is adversity is prudential, and there's a whole dissent on that saying, no, it's not. It's an article three element, and so if it's just prudential, how can adversity be the same thing as the question of are there real world consequences? Because doesn't that go to the core of article three? If there are no real world consequences, who cares if people are putting up a big debate in front of us? We still can't answer the question. As I was discussing, I think the court uses adversity under a variety of different standards, and I think we need to square Windsor, and the Supreme Court's been very clear that you have to square its more recent precedents with its older precedents, and there are centuries of precedent saying that adversity is a key feature that is required for article three, and I think what they were saying there, and I think this is where a real world effect ties in, and this is how ... I think this explains away almost all of the cases cited by the NLRB here is when there's an adverse legal interest that is separate and apart, and that there'll be a change to the relationship separate and apart, then there will now be a judgment reflecting the terms of that relationship, then there is sufficient adversity for article three jurisdiction, and that's why I think it's key here that I still am not aware of anything, any way in which the relationship that the parties would change. So, I promise, this is my last question. So, you're saying if there is going to be a change in the legal relationship separate and apart from the entry of a consent decree, then there is adversity, but if ... Shoot. Does it work? I'm still confused by ... If there is adversity, is it okay if the only change in the legal relationship is going to be the entry of a consent decree? I'm still trying to figure out why you think we have jurisdiction if the employer is disagreeing with the board about entry of this order. If the employer comes into court and says, I don't want this order entered, why do we have jurisdiction if there's no change in the relationship between the parties that would flow from our decision? Why isn't that just adversity but no real world consequence and we can't issue advisory opinions even if the parties are in disagreement? So, I think in the case where the board is challenging the enforcement of the order, there is adversity because they're seeking a different judgment and they're seeking a different judgment, presumably for some real world reason. I'm not aware of any situation where ... So, you think if the parties think ... If the parties are willing to fight, so that indicates they think there are real world consequences, then there are real world consequences. But other than that, the entry of a consent decree does not have real world consequences. I don't understand. Either entering a consent decree changes the legal relationship between the parties so that bracketing whether they agree or disagree, whether we have adversity or not, we have jurisdiction because this is a real world dispute and our answer will not be advisory or entering a consent decree does not have real world consequences. So, any opinion we issue will be advisory. I don't ... But you say no, like sometimes it has real world consequences and sometimes it doesn't. So, I think the absence of real world consequence here is caused by the unconditional agreement to comply with the order of the board. Did that ... Okay. So, why don't ... I'm sure ... Mr. Dickey, why don't you say this is just Hollingsworth versus Perry, right? That you can have adverse arguments and that is not adverse interests, right? And so, Judge Harris just positing that, okay, except that she is correct. If there's a consent board order that's entered just like we have here, then there is no adversity before our court, whatever Constellium says. I mean, Mr. Katzner agrees here, but it's not an adverse argument, right? It's an adverse interest, right? That's what Hollingsworth versus Perry tells us that just because you have a different argument doesn't matter. You have to have a different interest, right? So, why wouldn't you say, at least arguably here, that Judge Harris, you're exactly right. If there's a consent board order just like we have here, it really doesn't matter what Constellium says once they get to the court of appeals because there's no adverse interest. And Hollingsworth versus Perry tells us that an I think that's right, Judge Richardson. I think, you know, I don't think this court needs to cross that bridge there because here there's neither adverse argument nor adverse interest, but... No, absolutely, right? But, you know, that's the nature of responding to hypotheticals, right? We're trying to figure out the play in the joints and this is the, I take it Judge Harris is asking you a hypothetical that if we change this one fact, does it change the outcome? And I take there at least to be a reasonable argument to say, no, that doesn't change the outcome at all. Yeah, and I think, you know, maybe something that's operating in the background here is if I guess what I'm trying to get to is if you had a party who like say vigorously raised some sort of legal objection here but was saying, you know, but ultimately we support enforcement and, you know, we're going to abide by this. I don't think there would be any... There would not be the necessary kind of adversity there, so it's not, as you highlight, mere legal disagreement. I see my time has expired. I did just want to say, yes, Judge. I'm sorry to, you know, to jump in, but I actually have one other point. Judge Harris, is it okay if I pursue this? Oh, of course. Yes, I'm sorry. I've been discussing earlier, maybe it's your first presentation, but certainly I think, you know, with NLRB about the effect of a CHOA fertilizer. So, I want to talk about that because, I mean, it's a short opinion and the discussion's mainly about whether the Court of Appeals can there are not any applicable exceptions, and it lists a few, and one of them is jurisdiction, and federal jurisdiction. Doesn't talk about what really is their meaning there, what element of jurisdiction or anything like that, but it does say that, and it cites the SWIFT, and when I read that, I was like, okay, that's short, but it's citing the SWIFT, and SWIFT has a discussion on adversity, and maybe that is close to binding on us, and quite frankly against the position you advocate for, but when you go to the pinpoint site in SWIFT, it's not talking about SWIFT's discussion of adversity, it's talking about another section. So, if that's true, is it fair for us to say a CHOA really doesn't determine the outcome in favor of the NLRB's position here? It's there, but it's hard to really make sense of, because its reference to SWIFT is to another part of the inquiry. I think that's right, and I think, in fact, there was some discussion about whether OCHOA was more than a drive-by sort of jurisdiction ruling on this. I think OCHOA is, I read it as predominantly a case about the statutory authority courts have when they are reviewing one of these cases and limiting that authority to look beyond certain things, but certainly I think if the court was at particular forward-looking relief and that SWIFT discussed adversity, if they were going to cite SWIFT for the proposition that there's adequate adversity here, they would have cited that proposition. But counsel, so I thought your argument instead was going to be that all that OCHOA says is there's no claim of a lack of federal jurisdiction, right? The only statement here is that there is no claim of a lack of federal jurisdiction, which is true, right? If you go look at the briefing before the Supreme Court, nobody's claiming that there's a lack of jurisdiction, and yes, maybe we hope that courts examine their own jurisdiction closely, but, you know, that's the famous, you know, drive-by line that we get in Steel Co. that where we're talking about what they're saying is that there's no claim of a lack of jurisdiction. Well, of course, they have to look at their own jurisdiction, and so we should assume that they've done their job well and that they've thought about adversity and that they've rejected is like the assumption too far. Right, I think that's certainly true, and I think what, so I think both are correct. So in OCHOA, you have the court was discussing the statutory arguments that were before the court in that case, given the way the Fifth Circuit had decided the case below. I don't view OCHOA as even touching on Article III jurisdiction. It's noting that Article III jurisdiction argument had been raised, and even like going beyond that, if it thought, you know, there could have been some argument about adversity, I mean, it would have been obligated to do something, you know, cite to some authority on that or to do something about that. So I don't view it as touching, even like suggesting that the parties had failed to raise adversity or saying anything on it one way or another. I think it's a prototypical drive-by jurisdictional rule. I see I'm over on time. I did just, if I could mention one thing, which is there was this discussion that the party clearly intended this decision to be enforced, but I just wanted to note, as we said in our brief, it's not about the intent of the parties, it's about the real-world effect. If the intent in resolving the dispute was well covered, then the court would dismiss the appeal and present the case to the parties. If there are no further questions, I would urge the court to dismiss the petition for review. Thank you all very much for your very helpful arguments. We are sorry we had so many questions and kept you here so long, but it was enormously useful. We are sorry we cannot thank you in person, but we hope you will stay well and that we will see you soon in Richmond.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.